*In the Matter of Maryland Office of People's Counsel, et al.,* No. 2033, September Term, 2022. Opinion by Graeff, J.

**REGULATION OF PUBLIC UTILTIES — PUBLIC INTEREST — DISMISSAL OF COMPLAINT —*ACCARDI* DOCTRINE**

The Public Service Commission (the "Commission") does not have unfettered discretion to dismiss a complaint filed under the Public Utilities Article (the "PUA"). Rather, pursuant to COMAR 20.07.03.03A, the Commission may dismiss a complaint only where it finds that the complaint fails to state a claim upon which relief can be granted. The Commission may not dismiss a complaint because it has "no interest" in deciding the merits of a complaint or because it decides that the issue is not "worthy of [its] time or resources." Dismissal of a complaint on a ground other than failure to state a claim violates the *Accardi* doctrine, which provides that an agency of the government must observe its own rules, regulations, or procedures.

The Commission's dismissal of the complaint for failure to state a claim without addressing the PUA was erroneous and/or arbitrary and capricious. The Commission found that dismissal was warranted because the complaint was an inappropriate forum to address broader issues related to natural gas. The complaint, however, did not require the Commission to resolve far-reaching environmental policy issues. Rather, it asked the Commission to consider whether three specific statements violated the PUA because the unqualified claims were deceptive. The Commission was not authorized to dismiss the complaint on the grounds that it involved broad issues that may affect other natural gas companies because the Commission may only dismiss a complaint for failure to state a claim.

Dismissal of claims against WGL Energy for violations of the utility code of conduct based on improper affiliation was an abuse of discretion. The record demonstrates that there were still facts in dispute regarding the source of the marketing message, and therefore, dismissal was premature.

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 2033

September Term, 2022

_____

IN THE MATTER OF MARYLAND OFFICE
OF PEOPLE'S COUNSEL, ET AL.

_____

Graeff,
Leahy,
Getty, Joseph M.
　　　(Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Graeff, J.
Dissenting Opinion by Getty, J.

_____

Filed: December 20, 2023

* Tang, Rosalyn, J., and Albright, Anne K., J.,
did not participate in the Court's decision to
designate this opinion for publication pursuant to
Md. Rule 8-605.1.

Pursuant to the Maryland Uniform Electronic Legal Materials
Act (§§ 10-1601 et seq. of the State Government Article) this
document is authentic.



Gregory Hilton, Clerk

This case arises from two orders issued by the Maryland Public Service Commission (the "Commission"), one of the appellees. Order No. 90057 dismissed the complaint filed by the Office of People's Counsel (the "OPC"), alleging that marketing statements issued by Washington Gas Light Company ("Washington Gas"), another appellee, in affiliation with appellee WGL Energy Services, Inc. ("WGL Energy"), the third appellee, were deceptive and misleading in violation of the Public Utilities Act ("PUA") and the Code of Maryland Regulations ("COMAR"). Order No. 90175 denied the OPC's request for a rehearing on the dismissal of the complaint.

The OPC and Sierra Club, appellants, filed separate petitions for review in the Circuit Court for Montgomery County. The circuit court affirmed the Commission's decisions.

On appeal, appellants present several questions for this Court's review, which we have consolidated into the following question:

> Was the Commission's dismissal of the OPC's complaint alleging deceptive marketing practices under the PUA and a violation of the utility code of conduct unlawful and/or arbitrary and capricious? [1]

---

[1] The OPC raises the following two questions:

1. By dismissing OPC's complaint based on the "forum" and accepting as true Washington Gas's representations, rather than addressing the complaint's legal sufficiency, was the Commission's dismissal unlawful and procedurally defective?

2. Did the Commission act arbitrarily and capriciously when it (a) did not address OPC's claims under the Public Utilities Article, and (b) failed to consider how the marketing impacts greenhouse gas emission reductions and State climate goals?

For the reasons set forth below, we shall reverse the judgment of the circuit court and order that court to vacate the Commission's orders and remand to the Commission for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.

### Public Utilities Act

The Maryland Public Service Commission was established in 1910. *Office of People's Counsel v. Md. Pub. Serv. Comm'n*, 355 Md. 1, 24 (1999). "It is an independent unit in the Executive Branch of State government," Md. Code Ann., Public Utilities ("PU") § 2-101(a) (Supp. 2023), and it supervises and regulates public service companies that engage in or operate a utility business in the state, as well as third-party suppliers of gas and electric power. PU §§ 2-112, 2-113, 7-507, 7-603. The Commission's authority is pervasive and governs entry into the industry, safety and service standards, franchise

---

Sierra Club raises the following three questions:

1. Does the Commission's failure to articulate its rationale for dismissing OPC's complaint render the Commission's decision arbitrary and capricious?

2. Did the Commission err as a matter of law in resolving issues of material fact in the absence of any evidence on the record?

3. Did the Commission err when it determined that WGL has a right of self-certification?

2

activities, the regulation of rates, stock issuance, and reporting requirements. *Delmarva Power & Light Co. v. Pub. Serv. Comm'n of Maryland*, 370 Md. 1, 7 (2002).

Pursuant to PU § 2-113(a) (2022 Supp.):

(1) The Commission shall:
    (i) supervise and regulate the public service companies subject to the jurisdiction of the Commission to:
        1. ensure their operation in the interest of the public; and
        2. promote adequate, economical, and efficient delivery of utility services in the State without unjust discrimination; and
    (ii) enforce compliance with the requirements of law by public service companies, including requirements with respect to financial condition, capitalization, franchises, plant, manner of operation, rates, and service.
(2) In supervising and regulating public service companies, the Commission shall consider:
    (i) the public safety;
    (ii) the economy of the State;
    (iii) the maintenance of fair and stable labor standards for affected workers;
    (iv) the conservation of natural resources;
    (v) the preservation of environmental quality, including protection of the global climate from continued short-term and long-term warming based on the best available scientific information recognized by the Intergovernmental Panel on Climate Change; and
    (vi) the achievement of the State's climate commitments for reducing statewide greenhouse gas emissions, including those specified in Title 2, Subtitle 12 of the Environment Article.[2]

PU § 7-604(a) provides that "the Commission shall adopt consumer protection orders or regulations for gas *suppliers*," which "protect consumers from discriminatory,

_____

[2] This is the version of the statute in effect at the time the OPC filed its complaint in November 2021. The General Assembly amended the statute, effective July 1, 2023, to add (a)(2)(vii), which requires the PSC to consider the protection of a public service company's infrastructure against cybersecurity threats in supervising and regulating public service companies. Md. Code Ann., Public Utilities ("PU") § 2-113(a)(2)(vii) (Supp. 2023).

unfair, deceptive, and anticompetitive acts and practices in the marketing, selling, or distributing of natural gas." (Emphasis added.) Pursuant to this requirement, the Commission promulgated regulations, which are codified at MD. CODE REGS. 20.59.07.07(A)(2) ("COMAR") (2023) and state, in pertinent part, that: "A supplier may not engage in a marketing or trade practice that is unfair, false, misleading, or deceptive." These regulations do not apply to public service companies. *See* COMAR 20.59.01.02 & 20.54.01.02.

Washington Gas is a "public service company," authorized to distribute natural gas to Maryland customers as a utility regulated under the PUA. PU § 1-101(z).[3] WGL Energy is a "core service affiliate" under COMAR 20.40.01.03(B)(4), and a gas supplier pursuant to PU § 1-101(p)(1). It supplies gas to Maryland customers through its affiliation with Washington Gas. The OPC asserts that both companies are subsidiaries of WGL Holdings Inc.

---

[3] PU § 1-101(m) provides:
    (1) "Gas company" means a public service company that:
      (i) is authorized to install or maintain facilities in, over, or under streets for furnishing or distributing gas; or
      (ii) owns a gas plant and:
        1. transmits, sells, supplies, or distributes artificial or natural gas; or
        2. manufacturers gas for distribution or sale.
    (2) "Gas company" includes a municipal corporation that is in the business of supplying gas for other than municipal purposes.

## Complaint

On November 23, 2021, the OPC filed a complaint with the Commission. The OPC is authorized under PU § 2-204 to represent residential and noncommercial users before the Commission and request the initiation of proceedings to "protect the interests of residential and noncommercial users." The OPC has statutory standing and is obligated to "evaluate each matter pending before the Commission to determine if the interests of residential and noncommerical users are affected." PU § 2-204(a)(1)(i). In making this determination, the OPC "shall consider . . . environmental interests of the State and its residents, including the State's progress toward meeting its greenhouse gas emissions reductions goals." PU § 2-204(a)(1)(ii).

The complaint alleged that Washington Gas and WGL Energy violated the PUA and COMAR by including the following marketing statements in certain customer bills:

> Natural gas is a clean, efficient, and reliable energy. Converting an all electric home to natural gas is the equivalent of planting 2.75 acres of trees or driving 26,520 fewer miles each year. In addition, natural gas cost[s] 1/3 less than electric, which makes it a smart decision for the environment and your wallet.

The complaint asserted that these billing statements included "broad and misleading claims of environmental benefits from natural gas use," which could "deceive and mislead utility customers about the emissions attributes of natural gas."

The complaint alleged that the bills included "at least three unfair and deceptive statements." First, the statement that "[n]atural gas is a clean . . . energy" falsely implied that natural gas use does not result in significant greenhouse gas emissions and was

5

misleading about "other emissions attributes of natural gas." Second, the statement comparing conversion of an all-electric home to planting 2.75 acres of trees or driving 26,520 fewer miles each year was deceptive because it lacked context regarding the term "all electric," overstated the environmental attributes of natural gas use, and could confuse consumers regarding the "actual environmental benefits of converting to natural gas." Third, the statement claiming that "[n]atural gas costs 1/3 less than electric, which makes it a smart decision for the environment and your wallet," was deceptive because it was unqualified and could "confuse customers into thinking that natural gas" was "generally environmentally friendly and 'green.'"

The complaint asserted that Washington Gas' actions in including these statements on its bills violated PU § 2-113 because deceptive marketing claims were contrary to the public interest. The actions violated PU § 5-303 because they failed to "account for the quality of the environment through misleading and deceiving customers about the true environmental cost of increased natural gas consumption."

The complaint alleged that Washington Gas had advised that the billing statements were sent by WGL Energy, and the statements were unique to bills issued to customers supplied by WGL Energy. This "raise[d] significant issues" about whether Washington Gas "engages in joint marketing with its affiliates and whether it treats its affiliates preferentially, in violation of the utility code of conduct" set forth in COMAR 20.40.02.01(B)(2) & (4).

The OPC attached to the complaint customer bills issued on October 8, 2021, and November 8, 2021, which contained the marketing statements at issue. The customer bills

6

were on Washington Gas letterhead and included distribution charges from Washington Gas and supply charges from WGL Energy.

The OPC requested that the Commission grant the following relief:

a.  direct Washington Gas and WGL Energy to immediately remove the billing statement at issue from further customer bills;

b.  direct Washington Gas to satisfy this complaint within 30 days by:

    1.  answering the allegations contained in this complaint;
    2.  responding to the data requests included in Appendix B;
    3.  showing cause as to why it should not be subject to civil penalties under PUA § 13-201 for engaging in deceptive marketing practices contrary to the public interest and for failing to meet the standard of safe, adequate, just, reasonable, economical and efficient service and for not considering the quality of the environment, as required under PUA §§ 2-113 and 5-303;

c.   direct WGL Energy to satisfy this complaint within 30 days by:

    1.  answering the allegations contained in this complaint;
    2.  responding to the data requests included in Appendix B;
    3.  showing cause as to why it should not be subject to civil penalty under PUA §§ 7-603 and 13-201 for (a) engaging in deceptive marketing practices and (b) failing to comply with the Commission's consumer protection regulations as contained in COMAR 20.59.07;

d.  issue an order levying civil penalties against Washington Gas for at least $500,000 and WGL Energy for at least $500,000, subject to revision resulting from further investigation; and

e.   issue an order opening an investigation into the transactions of Washington Gas and WGL Energy to determine whether Washington Gas is violating the utility code of conduct.

# III.

## Comments Submitted to Commission

On November 24, 2021, in response to the complaint, the Commission initiated a new docket, Case No. 9673, and it requested comments from interested parties. The Office of the County Attorney, the Staff of the Maryland Public Service Commission ("Commission Staff"), and Sierra Club all submitted comments.

The Office of the County Attorney for Montgomery County filed a letter in support of the complaint, stating that the complaint raised concerns that merited a thorough investigation. Noting disputed factual issues, Commission Staff requested the establishment of a schedule to conduct discovery and the opportunity to respond to comments from Washington Gas and WGL Energy (the "Gas Companies").[4] Commission Staff indicated that it could not adequately respond without answers to questions, such as:

> which [c]ompany was responsible for sending the bill, which [c]ompany was responsible for the development of the language in question, the analysis and research that informed the bill messaging in contention, the process by which other suppliers can send unique bill messaging on the Washington Gas [ ] bill, and whether the bill message in question was included on any other supplier and utility consolidated bills.

With regard to the deceptive marketing claims, Commission Staff agreed with the OPC that, "by not qualifying the bill message regarding environmental benefits, potentially misleading statements are being made to customers on a nuanced subject." It noted that the contentions were dependent on a myriad of fluctuating circumstances, such as spikes

---

[4] Commission Staff asked that parties be given at least 60 days to conduct discovery and provide written comments.

in natural gas prices, the efficiency of customer-specific appliances, and the achievement of legislative goals over the next decade to reduce greenhouse gas emissions. Without "context or qualifiers," customers may not be able to make an informed decision on whether switching to gas would reduce their emissions or result in a cost savings, leading to potential violations of law governing misleading or deceptive statements.[5]

Sierra Club agreed with the OPC that the billing statements were misleading and deceptive. It characterized the marketing statements in the utility bills as greenwashing, i.e., "the act of misleading consumers regarding the environmental benefits of a product or service" to trick customers who want to make environmentally conscious choices into "buying products based on [an] erroneous belief that the products have some environmental benefit." Sierra Club agreed that civil penalties should be imposed, but it also asked the Commission to institute a proceeding requiring Washington Gas to: (1) fund an "education program to inform the public of the negative effects of fossil fuel use"; and (2) "institute a rulemaking proceeding to develop" regulations governing environmental claims.

Sierra Club argued that the Commission should look to the Maryland Consumer Protection Act ("MCPA") and the Federal Trade Commission's Green Guidelines to determine if the Gas Companies were operating "in the interest of the public" when including the marketing statement in customer bills. It asserted that, under the MCPA, an

---

[5] Commission Staff noted concerns regarding reference to the Maryland Consumer Protection Act (the "MCPA"), noting that, pursuant to Md. Code Ann., Com. Law ("CL"), §13-104(2) (2013 Repl. Vol.), the MCPA did not apply to a public service company to the extent its services and operations were regulated by the Commission. Commission Staff stated that, because "billing by a gas company is regulated by the Commission, a violation of the [MCPA] could not be sustained."

"unfair or deceptive trade practice includes any false or misleading statement or representation which has the capacity, tendency, or effect of deceiving or misleading consumers."

Sierra Club then addressed the specific statements. It argued that the Gas Companies' assertion that natural gas is clean energy falsely implied that its use did not result in any harmful emissions. Sierra Club cited to various studies alleging that emissions of harmful gases from burning natural gas contribute to climate change and are detrimental to human health. It also claimed that "residential GHG emissions are overwhelmingly from burning gas in homes," and "gas stoves release toxic pollutants that can damage human health."

Sierra Club asserted that the Gas Companies' claim that natural gas costs 1/3 less than electricity was a false and misleading comparison. Relying on a recent Maryland Department of Environment collaborative study ("E3 Maryland Study"), Sierra Club alleged that, given the improved efficiency of electric equipment and the projected natural gas rate increases, "all-electric homes cost less to construct and operate than mixed-fuel homes."[6] Sierra Club contended that, as consumers move away from gas consumption, those who transition to natural gas could end up paying more due to rate increases, and they would not recoup their investment.

Sierra Club also challenged the Gas Companies' claim that conversion of an all-electric home to natural gas is the equivalent of planting 2.75 acres of trees or driving

---

[6] One exception in the cited study was for large existing mixed-fuel commercial buildings. Retrofitting these buildings for electric could result in increased costs.

10

26,520 fewer miles each year, asserting that this "comparative statement" was "deceptive and misleading." It argued that the Commission should require the Gas Companies to show that they had a reasonable basis for the claim before it was disseminated to customers.

## IV.

### Briefing Before the Commission

### A.

### Washington Gas' Motion to Dismiss

Washington Gas requested that the Commission dismiss the complaint as meritless. It alleged that the OPC failed to conduct "even minimal due diligence" to determine whether its claims were warranted by existing law or whether its factual contentions had or were likely to have evidentiary support.

Washington Gas first clarified that the customer bills at issue were not supplier consolidated bills as it originally had stated. Instead, they were utility consolidated bills, issued not by WGL Energy, but by Washington Gas.

Washington Gas argued that it had not engaged in deceptive marketing practices, asserting that its bill statements were consistent with Maryland energy policy promoting the expansion of natural gas to support economic growth. It stated that its environmental statements were accurate and verifiable. Washington Gas addressed each of the claims that the statements were misleading and cited studies and research to support its claims.

With respect to the characterization of natural gas as "clean energy," Washington Gas argued that this was an accurate statement compared to electricity. It stated that the OPC's analysis wrongly presumed that alternative forms of energy are cleaner than natural

11

gas. Noting the ongoing national and international debate concerning the impact of different energy sources, Washington Gas stated that "every source of energy consumed by humans causes adverse impacts to the environment," including renewable energy. Washington Gas asserted that commercial-scale wind and solar farms cause erosion, sediment accumulation, and water pollution that can harm animals and ecosystems. It stated that "[w]ind turbines kill millions of migratory birds and bats each year; hydroelectric dams block fish migration routes," which adversely affects their breeding cycles, and solar panels "incinerate insects and birds." Washington Gas identified air, water, and soil pollution risks associated with batteries, chemicals, heavy metals, and other materials used in wind and solar power farms.

With respect to the OPC's reliance on the National Association of Attorneys General ("NAAG") Guide to Environmental Marketing Claims for Electricity, which narrowly defined "clean energy" as "any energy source that does not cause significant emissions," Washington Gas argued that reliance on this definition was misplaced. It stated that the NAAG Guide was not binding on the Commission and differed from other federal guidelines assessing environmental benefit claims. Washington Gas cited comments by Staff to the Federal Trade Commission ("FTC"), which noted that the terms "clean" and "green" were unlikely to be found "inherently misleading."

To substantiate its claims that the conversion of an "all-electric home to natural gas is the equivalent of planting 2.75 acres of trees or driving 26,520 fewer miles per year," Washington Gas presented an Energy Solutions Center ("ESC") model using the most current data available. Based on this model, Washington Gas claimed that it actually

understated the benefits in its marketing statements because switching to natural gas equates to the planting of 4.6 acres of trees or driving 42,250 fewer miles per year. The most recent model, therefore, demonstrates that it "had and continues to have a reasonable basis for those statements."

Washington Gas next presented support for its claims that "[n]atural gas costs 1/3 less than electric, which makes it a smart decision for the environment and your wallet." Washington Gas contended that, using the ESC Residential Energy Calculator, residential customers using only natural gas spend 50% less on energy costs than those in an all-electric home. Although ESC is comprised of energy utilities and equipment manufacturers promoting the use of natural gas, Washington Gas claimed that the Energy Calculator is a "robust, transparent and reliable tool to compare the cost of energy sources," and its region-based methodology provides an accurate analysis of energy use and cost.

Washington Gas also argued that, in a previous case, the Commission decided that electric companies and electricity providers were permitted to self-certify and verify their environmental statements. It argued that it also should have been offered the opportunity to self-certify and verify the marketing claims at issue before "being subjected to a groundless complaint."

Washington Gas denied engaging in a joint marketing venture with WGL Energy and provided a sworn affidavit in support of its position. Washington Gas stated that it did not engage in preferential treatment in violation of the utility code of conduct regulations because the marketing statements appear on "UCBs [utility consolidated bills] of all CSPs [competitive service providers] utilizing the Company billing option, as well as the bills of

13

Washington Gas customers."[7]  It acknowledged its initial "miscommunication" that the billing statements were sent by WGL Energy, but it noted that, had the OPC been more transparent in its inquiry, Washington Gas would have asked for a copy of the bill at issue and "possibly avoid[ed] OPC's error in naming WGL Energy in its Complaint." Washington Gas claimed that, "with minimal due diligence," the OPC could have easily discovered that its allegations were false.

**B.**

**WGL Energy's Motion to Dismiss**

WGL Energy moved to dismiss the OPC's complaint against it for failure to state a claim upon which relief could be granted.  It stated that "[t]he environmental message is not WGL Energy's to explain or remove.  WGL had nothing to do with any decision to insert the message in [Washington Gas'] consolidated bills."  WGL Energy denied that there was any uncertainty as to the source of the marketing statements and stated that the customer bills at issue "were indisputably issued by Washington Gas."  WGL Energy clarified that it, along with other retail gas suppliers, had used Washington Gas' consolidated billing services for more than twenty years, but the billing services were "those of Washington Gas, not of WGL Energy."  WGL Energy denied ever engaging in joint marketing or having any role in the placement of marketing messages on consolidated

---

[7] Washington Gas attached UCBs and CSPs sent to customers in Maryland, DC, and Virginia, which it alleged showed that the marketing statement was included on all statements issued by Washington Gas, regardless of the gas supplier and with no preference given to WGL Energy.

bills, explaining that it conducts its own marketing and "has not, and does not," utilize Washington Gas' consolidated bill services for marketing purposes.

WGL Energy acknowledged that the OPC received misinformation from Washington Gas in response to its inquiry regarding the source of the messages, but it noted that the OPC never reached out to WGL Energy to verify the source of the marketing statements. In support of its motion to dismiss, WGL Energy attached a consolidated bill sent to the customer of a different retail gas supplier, Dominion Energy Solution Services, that also used Washington Gas' billing services. That bill contained the exact same marketing statement as the one in dispute, but it was from a different supplier, which WGL Energy asserted confirmed that the OPC's claims of improper joint marketing were "patently false" and "must be summarily rejected."

Finally, WGL Energy argued that the OPC's allegations involved "the inherent environmental attributes of natural gas" and broad "issues facing the entire natural gas industry." WGL Energy suggested that an inquiry regarding the broader implications of natural gas use "might require much of the Commission's valuable resources and should not be limited to one narrow complaint case."

## C.

### OPC Response to Motions to Dismiss

The OPC opposed the Gas Companies' motions to dismiss, citing studies and authority that it alleged discredited the Gas Companies' claims regarding the environmental and economic benefits of natural gas. The OPC also argued that there were

15

still genuine issues of material fact as to whether the marketing statements were used in all UCBs issued to retail supply customers or just to customers of WGL Energy.

The OPC characterized Washington Gas' claim regarding the OPC's due diligence in investigating the source of the customer bills as an attempt to "smear" its organization and distract from its own culpability for the misinformation. The OPC asserted that, once Washington Gas advised that it had "no control or connection" to the marketing claims and that the billing message was attributable to WGL Energy, the OPC had no reason to further investigate or contact WGL to confirm. The OPC argued that its pre-filing investigation "exceeded" its due diligence obligations, and Washington Gas' "shifting representations" highlighted its own due diligence failures. The OPC asserted that this ongoing uncertainty as to which customers received the marketing message created a dispute of fact necessitating discovery and precluding dismissal.[8]

The OPC next alleged that Washington Gas improperly attempted to transform a complaint for deceptive marketing under the PUA into an energy and climate change policy debate. The OPC urged the Commission to focus on the narrow question of whether the statements "tend to deceive customers" and not wade into the ongoing debate over energy policy and the reduction of greenhouse gas emissions.

The OPC also argued that Washington Gas incorrectly applied consumer protection law instead of analyzing the OPC's claim under the PUA. The OPC explained that, in its

---

[8] Although Washington Gas stated that the claims appeared on all USBs, regardless of affiliation, the OPC identified and attached examples of customer bills from Dominion Energy, a retail gas supplier not affiliated with Washington Gas, that did not contain the marketing statements.

16

complaint, it alleged a violation of the public interest provision of the PUA, which

mandates that the Commission shall operate in the interest of the public and

> consider . . . the preservation of environmental quality, including protection
> of the global climate from continued short-term and long-term warming
> based on the best available scientific information recognized by the
> Intergovernmental Panel on Climate Change . . . [and] the achievement of
> the State's climate commitments for reducing statewide greenhouse gas
> emissions.

PU §§ 2-113(a)(1)(i), (a)(2)(v)(vi).  The OPC clarified, however, that Maryland consumer

protection law was instructive in analyzing whether the marketing materials violated the

PUA's public interest provision.  The OPC contended that, under the FTC Policy Statement

on Substantiation and Green Guide regulations, the Gas Companies' failure to include

qualifying language in the marketing statement constituted an omission of "material

information likely to mislead the customer to their detriment."  It noted that, even the

support provided by Washington Gas included claims that natural gas was cleaner than

other fossil fuels or that it was relatively clean.  The OPC argued that, in failing to include

qualifying language when asserting that "natural gas is clean," Washington Gas violated

state and federal law prohibiting deceptive marketing.[9]

The OPC challenged Washington Gas' data on the efficiency and cost-savings

related to natural gas use, as well as its claims that natural gas is a "smart decision for the

environment," alleging that Washington Gas based its analysis on past circumstances

---

[9] The OPC also contended that Washington Gas failed to acknowledge negative health impacts associated with nitrogen oxide ("NOx") emissions from natural gas use, such as respiratory issues, as well as environmental and health concerns related to the extraction process, leaks, and fire and explosions.

17

where electricity was powered "almost exclusively" with fossil fuels. In 2022, however, 33.5% of all electricity produced in Maryland had to come from "qualifying renewable sources, such as solar and wind," and by 2030, that percentage would increase to 50%. Without this qualifying information, the statements were deceptive and misleading because, although natural gas use may be more cost-effective under certain circumstances, that is not always the case.

The OPC next argued that Washington Gas failed to "substantiate all reasonable interpretations" of its marketing statement. It asserted that several of the studies relied on by Washington Gas were outdated and inaccurate. For example, although the 2019 NIST study stated that "a natural gas HVAC system is currently more economical overall than an electric one," that study was based on data from 2008, when renewable sources accounted for only 5% of the region's electric grid fuel.

The OPC dismissed Washington Gas' assertion that converting an all-electric home to natural gas is the equivalent of planting 2.75 acres of trees or driving 26,520 fewer miles each year as an unsubstantiated comparison. The OPC claimed that Washington Gas relied on an industry group tool calculation based on emissions from passenger vehicles, not utility emissions, to conclude that conversion benefits are even greater than originally stated. In addition, regarding its original marketing claim, Washington Gas improperly relied on national, instead of regional, data when using the Energy Solutions Center's Residential Energy Calculator. When Maryland-specific data was used, the results showed only 0.3 fewer cars and 0.4 acres of trees planted. The OPC further argued that, when the use of a high-efficiency electric heat pump for home and water heating is factored in,

18

conversion to natural gas would result in adding more car miles to the road and "removing trees from the environment." The OPC asserted that the claims were thus deceptive because all reasonable interpretations of the conversion comparison could not be substantiated.

Finally, the OPC urged the Commission to reject Washington Gas' argument that it should have been permitted to self-certify its marketing message before being the subject of a complaint. It argued that, in addition to Washington Gas' initial denial of any connection to the marketing content, this argument missed the point that the marketing messages were "deceptive on their face" because they were not true without qualification. Because the message lacked context or qualification, self-certification "could not save the marketing messages from their inherently deceptive messaging."

**D.**

**Sierra Club Opposition**

Sierra Club filed oppositions to each of the Gas Companies' motions to dismiss. It contended that, because there was no statute or regulation providing the analysis for the Commission to follow in considering a motion to dismiss for failure to state a claim upon which relief should be granted, the Commission should apply the framework set forth under Maryland Rule 2-322(b), addressing the failure to state a claim in courts. Using that framework, the Commission was required to accept all facts alleged in the complaint as true. Moreover, dismissal was inappropriate because WGL Energy's contentions "demonstrate a factual dispute, not a failure to state a claim." Sierra Club asserted that the issue was not which company sent the bills, but rather, it was which company was

19

responsible for the marketing messages. Sierra Club dismissed evidence submitted by WGL Energy showing that the bills at issue went to its customers as well as to other non-affiliate service providers because the attached bill went to a Virginia customer, not a Maryland one. Sierra Club thus argued that WGL Energy did not refute its claim that only Maryland customers of WGL Energy received the bill at issue.

Sierra Club then addressed WGL Energy's claim that the complaint involved broad policy implications that should be addressed in a different forum. Sierra Club agreed that the Commission should institute a proceeding to address the future of the natural gas industry given Maryland's emission reduction goals. Sierra Club emphasized, however, that such a proceeding should be in addition to, not in the place of, the Commission's determination on the merits of the claims set forth in the OPC's complaint, which involved specific accusations of deceptive and misleading marketing statements in violation of the PUA.

In its opposition to Washington Gas' motion to dismiss, Sierra Club challenged the assertion that natural gas promotion is consistent with current Maryland energy policy, citing the 2016 passage of the Greenhouse Gas Emissions Reduction Act ("GGRA"), which aims for a 40% reduction in greenhouse gas emissions by 2030.[10] Sierra Club explained

---

[10] The commitments specified in Title 2, Subtitle 12 of the Environmental Article at the time the complaint was filed included a reduction in statewide greenhouse gas emissions of 25% from 2006 levels by 2020, and of 40% from 2006 levels by 2030. Md. Code Ann., Environment ("EN"), §§ 2-1204, 2-1204.1 (2021 Supp.). EN § 2-1204.1 was amended in 2022 to require a further reduction in statewide greenhouse gas emissions of 60% from 2006 levels by 2031. Md. Code Ann., Environment ("EN"), § 2-1204.1 (2023 Supp.) In addition, Section 2-1204.2 requires the state to "achieve net-zero statewide greenhouse gas emissions by 2045."

that, to achieve these goals, the Maryland Department of the Environment ("MDE") created a Greenhouse Gas Reduction Plan, which called for a 50% reduction by 2030 and proposed "incentivizing increased deployment of efficient electric heat pumps to heat homes and businesses." Sierra Club also noted that Maryland's Renewable Portfolio Standard calls for 50% of retail electricity sales to come from renewable energy sources by 2030.

Sierra Club next argued that Washington Gas could not substantiate all its marketing claims because the studies on which it relied in its opposition did not "provide a reasonable basis for supporting [its] broad claims" and were insufficient "in light of the entire body of relevant and reliable scientific evidence." As did the OPC, Sierra Club identified deficiencies in the studies relied on by Washington Gas.

## V.

### Commission's Order

On February 7, 2022, the Commission issued an order dismissing the OPC's complaint, without holding a hearing. The Commission first found that the record was clear that Washington Gas, not WGL Energy, issued the utility-consolidated bills containing the marketing statements at issue. Therefore, the Commission concluded that WGL Energy "should not have been a party to th[e] Complaint," and it dismissed the Complaint against WGL Energy. It stated that this rendered "the claim of inappropriate affiliate interaction moot."

With respect to the deceptive marketing claims against Washington Gas, the Commission stated:

21

[T]he complaint fails to adequately demonstrate a violation of state law or regulation in support of its broad allegations regarding the environmental attributes of natural gas.[n] As Washington Gas notes, Maryland has allowed self-certification of marketing claims. If OPC had revealed its concerns with the language included on gas bills to Washington Gas at the outset and requested an explanation, modification or removal of the bill message, the utility would have likely done so - or, at a minimum, a conversation would have occurred. But that did not occur, and now a significant amount of time, resources, and ratepayer dollars have been spent litigating a complaint that fails as a matter of law.

[n] Public service companies regulated by the PSC are exempt from the Consumer Protection Act. Comm. Law Art. §13-104(2).

Finally, the Commission stated that it:

agrees with WGL Energy and Washington Gas that a complaint against one utility is an inappropriate forum to address the broader issues raised by natural gas and its role in greenhouse gas emissions. The record establishes that Washington Gas did not provide any special benefit to WGL Energy by attaching this marketing language as Washington Gas provided numerous bills from other natural gas suppliers that contained the same language. Given that this was a utility-specific complaint that did not include the other natural gas companies in the State, it is clear that this complaint is not the proper forum in which to address such broader issues, even acknowledging that the Commission now has a statutory obligation to consider climate change.

Accordingly, the Commission ordered that the complaint be dismissed and the request for an investigation was denied.

In dissent, Commissioner Michael T. Richard stated that he supported appellants' request for an investigation into the billing relationship between Washington Gas and WGL Energy, stating that Washington Gas' own "verbal and written responses" raised legitimate questions as to which entity was responsible for the marketing messages and left appellants with "few options other than to request" an investigation. Commissioner Richard also agreed that Washington Gas should "cease using the gas-advertising message" at issue. He

22

noted that the majority did not address the OPC's false advertising claims, which the Commission's own staff supported, and it failed to "adequately address" Washington Gas' culpability for undermining its own credibility. Addressing the majority's conclusion that the Commission was an inappropriate forum for a complaint against one utility, Commissioner Richard stated that the Commission could expand the investigation to include other utilities, instead of dismissing the complaint. He also questioned why the company would not "simply agree – voluntarily – to cease repeating the unqualified claim that switching from an all-electric residence to one using natural gas necessarily results in a cleaner environment and less expensive energy bills."

## VI.

## OPC's Request for Rehearing

The OPC requested a rehearing of the Commission's order on several grounds. First, the OPC argued that the Commission misinterpreted the scope of its complaint, which was limited to a specific advertisement on Washington Gas' bills and did not require broad findings that would impact the natural gas industry.[11] The OPC stated that its complaint raised only the issue of "whether Washington Gas violated the Public Utilities Article by failure to qualify and contextualize its broad environmental marketing statements about natural gas."

The OPC next argued that the Commission erred in finding that it did not demonstrate a violation of any state law or regulation. It alleged that the only support for

---

[11] For example, the OPC stated that the unqualified statement that natural gas is a clean energy could be changed to say it is "a relatively clean energy source."

this conclusion was that "public service companies regulated by the PSC are exempt from" the MCPA, but the complaint did not allege an MCPA violation. The OPC reiterated that the legal basis for its claims was PU §§ 2-113 and 5-303, which govern the public interest and the environmental policy goals in performing the Commission's regulatory functions. It argued only that the MCPA was instructive on the assessment of deceptive marketing.

The OPC also argued the Commission's finding that gas companies may self-certify their marketing claims was not supported by the record. It noted that the issue whether the Commission should allow gas companies to self-certify their marketing statements, and "what such a process would look like," was not fully briefed by any party. Although the Commission previously allowed for self-certification of environmental statements by electric companies and providers, that authority followed the formation of a working group and a lengthy deliberative process, which would be warranted on this issue. The OPC was not aware of any similar proceeding for gas companies, and the Commission's decision to dismiss the complaint, which alleges that the claims are false, left "no apparent avenue for parties to challenge self-certification."[12]

Finally, the OPC contended there was still an issue of fact as to which customers were receiving the marketing messages. Prior to filing the complaint, the OPC contacted Washington Gas' counsel regarding the marketing messages, and he advised that Washington Gas had "no control over or connection to" the statements. In its motion to

---

[12] With regard to the Commission's finding that the OPC should have first reached out to Washington Gas to express its concerns with the marketing statements, the OPC noted that such efforts would be "at odds with the fact of this case" because "Washington Gas *denied having any 'control over or connection to' the marketing content.*"

dismiss, however, Washington Gas admitted that it was in fact responsible for issuing the marketing statements. Washington Gas claimed that the message was on every utility-consolidated bill issued. To support its claim, it provided samples of bills to customers with third-party suppliers other than WGL Energy that contained the marketing statements. In its response, the OPC challenged Washington Gas' claim by providing nine utility-consolidated bills that did not contain the marketing message, as well as an affidavit from a retail supply customer of Dominion Energy stating that the marketing statement was not on her utility-consolidated bill. The OPC asserted that not all customers with a third-party supplier received the statements at issue, and therefore, "Washington Gas's blanket claims as to who receives th[e] message cannot be true."

In response, Washington Gas argued that, although the Commission may consider new facts pursuant to PU § 3-114(a)(1), the OPC failed to meet this standard for a rehearing because it did not offer any new factual or legal grounds for modifying the Commission's original decision. With respect to which customers received the marketing messages, Washington Gas changed its position again, stating that only autopay customers received the marketing messages. It explained that invoices to these customers do not include remittance instructions, and therefore, there is room on the invoice for a bill message. Based on this discovery, Washington Gas stated that the "reach of the marketing statements" is nearly 80% less than previously understood.

The OPC replied, noting that Washington Gas' concession regarding the reach of its marketing statements constitutes a fact justifying a rehearing. The OPC also alleged that this new discovery belied the Commission's finding that this issue could have been

25

resolved with better communication between the parties and demonstrated the existence of an on-going factual dispute, which precluded dismissal of its complaint.

## VII.

## Commission Order

On April 20, 2022, the Commission issued an Order Denying Rehearing. It reiterated its earlier conclusion that the "complaint regarding a bill message" is not "the proper forum to address broad environmental and economic issues relating to the use of natural gas." The Commission found that the OPC "did not provide any new or persuasive reason to reconsider" its order dismissing the complaint.[13]

In a concurring statement, Commissioner Odogwu Linton stated that he concurred with the Commission's decision that the denial of the OPC's request for rehearing is "legally supported," but he noted that the decision did not approve or endorse the message, which he found to be "misleading because of its lack of context and specificity." He stated that, if Washington Gas intended to continue to use this bill message, and if the Commission became aware of any harm to customers, Washington Gas would bear "the burden and risk for any negative impacts on customers attributable to this message."

## VIII.

## Judicial Review in Circuit Court

Both the OPC and Sierra Club filed in the Circuit Court for Montgomery County petitions for judicial review of the Commission's order dismissing the complaint and its

---

[13] Because Commissioner Richard filed a dissenting opinion, he did not participate in the Order Denying Rehearing.

order denying the OPC's request for rehearing. The court consolidated the appeals, the parties fully briefed the issues, and the court held a hearing on November 3, 2022.

The OPC argued that the Commission's decision lacked a reasoned analysis, noting that the Commission admitted in its papers in the circuit court that it "simply has no interest in opening a proceeding to investigate a short statement on Washington Gas' residential bill[s]." The OPC compared the Commission's statement to a "trial court saying, you know what? Maybe they stated a claim, maybe they didn't, but I don't have any interest in hearing this, so I'm going to dismiss the case." Although the Commission "is entitled to a lot of deference . . . they don't get deference to decide not to do their job." The OPC also argued that the existence of a policy issue does not authorize a court to abstain from addressing the merits. It asserted that affirming the Commission's decision would render the complaint provision in the PUA "impotent, useless, [and] meaningless." Because the PUA is a "consumer protective statute" itself, "the default has to be in favor of the customers."[14]

With respect to self-certification, the OPC pointed out that Washington Gas "backed off from that" issue in its brief. The OPC argued that giving an "irrebuttable presumption to the utilities to market" through the self-certification process "would be an abdication of [the Commission's] responsibility to supervise and regulate." The OPC also claimed that the self-certification process governing electric suppliers does not apply to gas suppliers or gas companies.

---

[14] Counsel for the OPC spoke on behalf of the OPC and Sierra Club.

27

The OPC next argued that the Commission could rule on its deceptive marketing claims without implicating broader policy issues related to natural gas use by simply ruling on whether Washington Gas' unqualified statements violated the PUA. The OPC stated that the Commission, in its Memorandum of Law filed in response to its petition for judicial review, claimed that "all energy is dirty . . . there's no such thing as clean energy," while seemingly defending Washington Gas' unqualified marketing statement that natural gas is "clean." The OPC alleged that this concession illustrated precisely why the unqualified statements were potentially harmful to consumers and how they violated the PUA's public interest provision.

The OPC then addressed Washington Gas' assertion in circuit court that it had removed the statement at issue from its bill. It argued that this did not render the claim moot because it also sought civil penalties in its complaint.

Regarding WGL Energy, the OPC noted that, contrary to the Commission's finding, the OPC did attempt to identify the source of the message before filing its complaint but was told that Washington Gas had no connection to or control over the marketing statement. Acknowledging that WGL Energy may not be involved in the marketing message, the OPC stated that they "did not know for sure" because of Washington Gas' changing story and because there had been no discovery.

Finally, when questioned by the Court regarding other available avenues to address the marketing issues, the OPC stated that the Commission could address the issues in a rule-making or hold that the advertising should be stopped pending further evaluation of the claims. The OPC explained that the Commission "deals with far more complicated

28

issues than this all the time," and it often will address complex issues in a contested case in addition to opening a broader proceeding to address industry-wide ramifications.

The Commission argued that it "abstained" from ruling on the deceptive marketing claims because it did not want to address "general policy issues that would affect other gas companies." Counsel stated that he believed the Commission would "be more than happy to open up a rule-making or work group or . . . general proceeding for all stakeholders" to address "how they should characterize their product in light of the environmental concerns" mandated by the legislature. The Commission conceded that it has "handled plenty of deceptive marketing claims," issuing civil penalties and show cause orders against one party, "usually a third party supplier . . . [b]ut it could be anything." The Commission then asserted that it is not required to issue a show cause order, and it has discretion to "either exercise or not exercise jurisdiction" in a particular case.

Washington Gas argued that, because the Commission articulated its reasoning for dismissing the complaint, including an "improper procedural posture," self-certification, and inapplicability of the MCPA, its decision was not arbitrary and capricious. Washington Gas claimed that an agency's ruling on whether natural gas is clean would "encroach[ ] on the authority of the legislature."

On December 22, 2022, the court affirmed the Commission's decision to dismiss the OPC's complaint. The court stated that, under PU § 3-203, Commission decisions are considered prima facie correct and "shall be affirmed" unless they are arbitrary and capricious or legally incorrect. When an agency acts in its discretionary capacity, its actions "have a non-judicial" nature and are, therefore, owed a higher level of deference.

29

The court explained that the Commission's determination was "like a form of [abstention] in a sense" and noted that it seemed better to address policy issues in a forum where all stakeholders could be involved. The court concluded that, although "reasonable minds could disagree," the Commission's decision that a policy decision on clean energy claims would not be appropriate in a "single utility case" was not arbitrary and capricious and did not violate any other laws.[15]

This appeal followed.[16]

## STANDARD OF REVIEW

The standard of review of Commission decisions is set forth in PU § 3-203:

Every final decision, order, or regulation of the Commission is prima facie correct and shall be affirmed unless clearly shown to be:

> (1) unconstitutional;
> (2) outside the statutory authority or jurisdiction of the Commission;
> (3) made on unlawful procedure;
> (4) arbitrary or capricious;
> (5) affected by other error of law; or
> (6) if the subject of review is an order entered in a contested proceeding after a hearing, unsupported by substantial evidence on the record considered as a whole.

---

[15] The court noted that Washington Gas filed "a significant amount of information . . . which would support their position" that the standards were accurate. It noted that the viewpoint of what constitutes clean energy "can be in the eye of the beholder."

[16] This Court has jurisdiction to hear this appeal pursuant to PU § 3-209, which provides: "A party aggrieved by a final judgment in any proceeding under this subtitle may appeal the judgment to the Appellate Court of Maryland in the manner provided by law for appeals in other civil cases." PU § 3-209 (2023 Supp.).

*Accord Md. Office of People's Counsel v. Maryland Pub. Serv. Comm'n*, 461 Md. 380, 391 (2018).

> This Court has explained the scope of our review as follows:

> Because a final decision of the Commission is prima facie correct, it "will not be disturbed on the basis of a factual question except upon clear and satisfactory evidence that it was unlawful and unreasonable." *Office of the People's Counsel v. Maryland Public Service Commission*, 355 Md. 1, 14 (1999). Indeed, if reasoning minds could reasonably reach the Commission's decision from the facts in the record, then the decision is based upon substantial evidence, and we will not reject that conclusion. *Liberty Nursing Center, Inc. v. Department of Health and Mental Hygiene*, 330 Md. 433, 442-43 (1993).

*Maryland Office of People's Counsel v. Maryland Pub. Serv. Comm'n,* 226 Md. App. 176, 190-91 (2015) (quoting *Mid-Atl. Power Supply Ass'n v. Maryland Pub. Serv. Comm'n*, 143 Md. App. 419, 432 (2002)). The Commission must, however, articulate the basis for its decision; it is not the court's responsibility to "search the record before the Commission to determine if there exists evidence to support its conclusions." *Baltimore Gas and Elec. Co. v. Pub. Serv. Comm'n of Md.*, 75 Md. App. 87, 97-100 (1988) (remanding to Commission when it failed to state with particularity why the company failed to establish required procedures for awareness, alertness, and diligence).

On legal questions, however, PU § 3-203 "requires no greater deference to the Commission than any other agency." *Md. Office of People's Counsel*, 461 Md. at 394. Issues of law "are completely subject to review by courts." *Id.* (quoting *Commc'n Workers of America v. Pub. Serv. Comm'n*, 424 Md. 418, 433-34 (2012)).

Finally, as we have explained:

31

in reviewing a decision of an agency, our role "is precisely the same as that of the circuit court." *Department of Health & Mental Hygiene v. Shrieves*, 100 Md. App. 283, 303-04 (1994). Consequently, we "do not evaluate the findings of fact and conclusions of law made by the circuit court." *Consumer Protection Division v. Luskin's, Inc*., 120 Md. App. 1, 22 (1998), *rev'd in part on other grounds*, 353 Md. 335 (1999). This Court is not concerned with whether the circuit court applied the correct standard of review so long as we are satisfied that the agency decision is proper. *Giant Food, Inc. v. Department of Labor, Licensing and Regulation*, 124 Md. App. 357, 363 (1999), *rev'd on other grounds*, 356 Md. 180, 183 (1999).

*Maryland Office of People's Counsel,* 226 Md. App. at 191.

## DISCUSSION

The OPC contends that the Commission's decision to dismiss the complaint should be reversed because it was made on unlawful procedure, arbitrary and capricious, and affected by an error of law. *See* PU § 3-203(3)-(5). It challenges the decision on several grounds. First, it argues that the dismissal of the complaint was unlawful because the Commission does not have "discretion to dismiss a procedurally lawful complaint within the Commission's jurisdiction without addressing whether the alleged conduct violates the Public Utilities Article." It notes that the Commission dismissed the marketing claim on the ground that a complaint proceeding was not the right "forum," but pursuant to COMAR 20.07.03.03A(3), the Commission may dismiss a complaint only when it "fails to state a claim upon which relief can be granted." Second, the OPC argues that the "dismissal of WGL Energy was unlawful because it assumed the truth of Washington Gas's factual assertions," instead of properly assuming the truth of the facts "pleaded in the complaint." Third, the OPC contends that the dismissal order is arbitrary and capricious because (a) it did not address the OPC's claims under the PUA in dismissing the complaint and (b) it did

32

not consider how the marketing impacted greenhouse gas emission reductions and climate goals.[17]

Sierra Club contends that dismissal of the complaint was unlawful and arbitrary and capricious, raising several of the points argued by the OPC. It argues that the "Commission's unexplained conclusion that OPC's [c]omplaint fails to demonstrate a violation of state law or regulation is arbitrary and capricious." It asserts that PU § 2-113 required the Commission to investigate whether the statements were deceptive and misleading and inconsistent with the State's ability to achieve its climate commitments. Sierra Club argues that the "unsupported conclusion" that Washington Gas had a right to self-certification was arbitrary and capricious, and the denial of the OPC's request for a rehearing was arbitrary and capricious because Washington Gas presented new facts.

The Commission argues that it has broad authority to "set its own docket, initiate its own investigations, and decide which issues . . . are worthy of [its] time and resources." It asserts that it may "decide not to entertain [a] complaint," as long as the order dismissing the complaint "articulate[s] its reasoning," which it did in finding that the "broader issues of the role of natural gas . . . were not appropriate for a complaint proceeding" against one gas company.

---

[17] Appellants conceded at oral argument that the marketing statement had been removed from the customer bills a few months after the Commission's decision. Appellants argued, however, that the claim is not moot because the complaint requested civil penalties and an investigation, in addition to removal of the statements from the bills. We agree.

Washington Gas contends that the Commission's decision to dismiss the complaint based on the "inappropriateness of the forum" was a reasonable exercise of its "broad discretion to dismiss complaints." It asserts that the Commission's finding that "the complaint failed to adequately demonstrate a violation of state law or regulation" was reasonable because the complaint, among other things, did not specifically allege how the marketing statements violated the PUA, and it relied on statutes, such as the MCPA, that did not apply to Washington Gas. It contends that the Commission's reasoning is "clear and easy to follow," and there are alternative procedural and administrative mechanisms available to appellants to address their concerns, including a petition for a regulatory rulemaking procedure to establish guidelines for those types of statements. Finally, Washington Gas asserts that the dismissal of WGL Energy was not arbitrary and capricious because the OPC "does not actually dispute that the [marketing] statements were not printed on any WGL customers' bills."[18]

## I.

### Dismissal of Complaint Against Washington Gas

### A.

### Authority to Dismiss

We begin our analysis with the authority of the Commission to dismiss a complaint. The OPC contends that the PUA sets the limits of the Commission's discretion, and it does

---

[18] WGL Energy filed a line joining and adopting the arguments contained in appellees' briefs. WGL Energy did not participate in oral argument.

not grant "discretion to dismiss complaints alleging harm in violation of the PUA without addressing the complaint's legal sufficiency." The OPC asserts that dismissal for failure to state a claim is proper if the Commission determines the conduct alleged is not contrary to the public interest and does not otherwise violate the PUA, but the Commission does not have discretion to dismiss a complaint that states a legal claim for which it can grant relief.

The Commission's response in this case has been that it can dismiss a complaint when it has "no interest" in addressing the complaint or if it decides that the issue is not "worthy of [its] time or resources." In the circuit court, the Commission stated in its memorandum of law that it "simply has no interest in opening a proceeding to investigate a short statement on Washington Gas's residential bills and using Washington Gas's arguably true claims to initiate a broad proceeding involving national energy policy." In its appellate brief, counsel for the Commission asked this Court to rule that it had the authority to decide which issues were "worthy of the time and resources" to examine violations. At oral argument, counsel for the Commission challenged this Court's ability to provide a remedy, asking if the Court was "going to remand and order us to care about this complaint."

We disagree with the Commission's position that it has an unfettered right to dismiss a complaint, including because it has "no interest" in deciding the complaint's merits. As indicated, PU § 2-113(a) provides that the Commission "shall supervise and regulate the public service companies subject to the jurisdiction of the Commission to," among other things, "ensure their operation in the interest of the public." PU § 2-113(a)(1)(i). A holding that the Commission has unbridled discretion to dismiss a complaint would undermine the

35

statutory mandate that the Commission hear complaints to ensure that utilities act in the public interest. *See Md. Office of People's Counsel*, 461 Md. at 403 ("It is true that the public interest is important to nearly everything a utility does."); *Bell Atlantic of Md., Inc.*, 366 Md. at 20 ("The [PUA] allows the Commission to serve as a forum to address consumer complaints.").

The procedure for handling complaints filed with the Commission is governed by PU § 3-102 and COMAR 20.07.03.03. PU § 3-102(a) provides that "[a]ny person may file a complaint with the Commission," and "[t]he complaint shall be in writing and set forth circumstances that allege a violation of this division by a public service company." PU § 3-102(f) provides:

> Unless a complaint is voluntarily satisfied, the Commission shall take final action on each complaint by issuing an order that:
>     (1) dismisses the complaint;
>     (2) directs full or partial satisfaction of the complaint; or
>     (3) directs any action that the Commission considers to be warranted.

The Commission relies on the authority in PU § 3-102(f)(3), allowing it to direct "any action that the Commission considers to be warranted," which it argues includes "the authority to decide not to entertain the complaint at that time." Washington Gas agrees, but it also argues that the Commission was authorized to dismiss the complaint under PU § 3-102(f)(1), asserting that the statute does not limit the basis for dismissing a complaint.

We agree that PU § 3-102(f) does not limit the grounds for dismissing a complaint. COMAR 20.07.03.03, however, which addresses complaint procedures, does limit the

grounds on which the Commission may dismiss a complaint.[19] Specifically, COMAR 20.07.03.03A provides that:

> When a complaint is received, the Commission may:
>
> (1) Conduct an ex parte investigation;
> (2) Issue a satisfy or answer order to the public service company complained of, in a manner prescribed by the Commission; or
> (3) Dismiss the complaint if it fails to state a claim upon which relief can be granted.

Thus, pursuant to COMAR 20.07.03.03A, the Commission's discretion to dismiss a complaint is limited to situations where it finds that the complaint fails to state a claim upon which relief can be granted.

The OPC argues that dismissal of a complaint on a ground other than a failure to state a claim violates the *Accardi* doctrine. *See United States ex rel Accardi v. Shaughnessey,* 349 U.S. 260, 268 (1954). This doctrine, which the Supreme Court of Maryland adopted, in a modified form, provides that "an agency of the government generally must observe rules, regulations or procedures which it has established and under certain circumstances when it fails to do so, its actions will be vacated and the matter remanded." *Pollock v. Patuxent Inst. Bd. of Review*, 374 Md. 463, 503 (2003). This doctrine is "consistent with Maryland's body of administrative law, which generally holds that an agency should not violate its own rules and regulations." *Id.*

The Commission does not dispute the general rule that agencies must follow their own regulations. It notes, however, that there is an exception for certain procedural rules.

---

[19] Pursuant to PU § 3-101(a), "[a] proceeding before the Commission shall be governed by the regulations and practices of the Commission in conformity with this title."

To be sure, the Supreme Court of Maryland has adopted an exception to the *Accardi* doctrine, "which provides that the doctrine does not apply to an agency's departure from purely procedural rules . . . [that] are adopted for the orderly transaction of agency business." *Id.* If an agency rule or regulation "affects individual rights and obligations" or "confers important procedural benefits," however, the *Accardi* doctrine requiring the agency to follow its regulations applies. *Id*.

Here, we conclude that the exception to the *Accardi* doctrine does not apply because COMAR 20.07.03.03A(3) impacts the rights of residential customers, whom the OPC is statutorily obligated to protect. Accordingly, the Commission is required to follow COMAR 20.07.03.03A, and dismissal of a complaint is warranted only if it fails to state a claim upon which relief can be granted. The Commission cannot dismiss a complaint simply because it is "not interested" or does not want to address it.

**B.**

**Failure to State a Claim**

We thus turn to the grounds cited in the Commission's Order for dismissing the OPC's deceptive marketing claims. The Commission stated that the OPC "fail[ed] to adequately demonstrate a violation of state law or regulation in support of its broad allegations regarding the environmental attributes of natural gas." This indicates a dismissal based on the failure to state a claim upon which relief may be granted.[20]

---

[20] The Commission referenced in a footnote COMAR 20.07.03.03(A), and the authority to dismiss a complaint if it failed to state a claim upon which relief may be granted.

38

The OPC and Sierra Club contend that the Commission's finding that the Complaint failed to "adequately demonstrate a violation of state law or regulation" was erroneous and/or arbitrary and capricious. They assert that the ruling failed to address the legal insufficiency of the complaint and failed to address the PUA at all, in violation of PU § 3-113.[21] They argue that an agency's decision cannot be sustained "if the legal basis of that decision is uncertain or if the decision avoids the facts and law at issue."

The Commission Order discussed three points in support of its finding that the OPC complaint failed to state a claim for which relief can be granted: (1) public service companies regulated by the PSC are exempt from the Consumer Protection Act; (2) Maryland has allowed self-certification of marketing claims; and (3) the OPC's complaint against one utility was an "inappropriate forum to address the broader issues" relating to natural gas's role in greenhouse gas emissions. We analyze each of those statements, in turn.

---

[21] PU § 3-113(a) provides:

(a) A decision and order of the Commission in a contested proceeding shall:
    (1) be based on consideration of the record;
    (2) be in writing;
    (3) **state the grounds for the conclusions of the Commission**; and
    (4) in the case of a complaint proceeding between two public service companies, be issued withing 180 days after the close of the record.

(Emphasis added.)

# 1.

## Maryland Consumer Protection Act

After stating that the complaint failed "to adequately demonstrate a violation of state law or regulation," the Commission dropped a footnote stating that "[p]ublic service companies regulated by the PSC are exempt from the Consumer Protection Act." Appellants argue that this footnote, coupled with the lack of any citation to the PUA, implies that the Commission's ruling was premised on the MCPA exemption for public service companies. The problem, appellants assert, is that the complaint did not allege a violation of the MCPA; rather, it cited to the MCPA only as instructive in the evaluation of whether the marketing messages were deceptive and misleading in violation of PU §§ 2-113(a) and 5-304. They allege that the Commission erred in failing to address the PUA claims and in "simplistically stating" that the MCPA did not apply to its claims.

Washington Gas argues that the OPC's complaint was "vague as to whether it was alleging a violation of the [M]CPA," and it was reasonable for the Commission to interpret the complaint to allege a violation of the MCPA. [22] It argues that the footnote in the order merely clarified that the MCPA was not applicable to Washington Gas, but the decision was not based on the MCPA.

A review of the complaint reveals that it clearly alleged violations of the PUA. Although the complaint stated that the MCPA "is instructive on the Commission's

---

[22] The Commission does not address the specific claims raised by appellants in this regard, other than its assertion that it can decide which cases "are worthy of its time and resources."

assessment of deceptive marketing and consumer protection violations," the complaint was based on violations of: (1) PU § 2-113, on the ground that deceptive marketing claims were "contrary to the public interest and the adequate, economical and efficient delivery of utility services in the State"; and (2) PU § 5-303, because the claims did not "meet the standard of safe, adequate, just, reasonable, economical and efficient service and fail to account for the quality of the environment through misleading and deceiving customers about the true environmental cost of increased natural gas consumption." The relief requested included that the Commission order appellees to show cause why they should not be subject to civil penalties pursuant to the PUA.

Although the complaint clearly asserted violations of the PUA, the Commission's Order did not refer to the PUA. Rather, its statement that the complaint failed "to adequately demonstrate a violation of state law or regulation" is followed immediately by the footnote that the MCPA did not apply to public service companies. It is, therefore, unclear whether the finding that the complaint failed to state a claim was based on a finding that the MCPA did not apply to Washington Gas. To the extent the Commission made such a finding, it was erroneous or arbitrary and capricious because the complaint was not based on a violation of the MCPA.

**2.**

**Self-Certification**

After the statement that the complaint failed to demonstrate a violation of state law or regulation, the next statement is: "As Washington Gas notes, Maryland has allowed self-

41

certification of marketing claims." Sierra Club correctly points out that this "bald assertion" was made without explanation or factual support.

The Commission did not cite to, and the PUA does not provide, any authority for gas companies to self-certify environmental marketing claims. The parties cite to one previous instance where the Commission permitted self-certification and verification. This did not, however, involve gas companies. Rather, it involved electric companies and electricity producers, which, pursuant to PU § 7-505(b)(4), were required to provide customers with information regarding the fuel mix of the electricity. After an in-depth rule-making process, including the formation of an Emissions Disclosure Working Group, comments from multiple industry stakeholders, and a hearing, the Commission adopted the initial proposed Environmental Information Disclosure Rules, noting that "it is imperative that emissions and fuel mix information be provided in an easy to understand and consistent format." *Provision, Regul. of Elec. Serv.*, Order No. 76241, 2000 WL 1283749 (Md. P.S.C.) (Case No. 8738, June 15, 2000).

In a subsequent order, *Provision, Regul. of Elec. Serv.*, Order No. 77412, 2001 WL 1824061 (Md. P.S.C.) (Case No. 8738, December 11, 2001), the Commission considered whether third-party verification or self-certification would be the best approach to ensuring accuracy in disclosure of fuel mix and emissions data. *Id.* After considering stakeholder comments, the Commission concluded that a third-party emissions and fuel mix tracking system would ensure accurate information and best serve the public interest, but it allowed self-certification if: (1) the provider demonstrated that use of the third-party verification system was too burdensome; (2) the party documented that it had sufficient controls to

42

assure that the disclosures met the accuracy standards; and (3) the standards adopted were "subject to audit by the Commission when necessary." *Id.* The Commission stated that, with respect "to electric companies and electricity providers making environmental claims," the Commission would permit self-certification and verification, but it reserved the right to audit reports "to ensure adequacy and accuracy," and it stated that it could "impose civil penalties for any willful or negligent error made by any provider in reporting fuel mix and emissions data." *Id.*

The Commission's summary statement here is markedly different from the extensive process undertaken, and the controls in place, regarding self-certification in the electricity industry. The OPC contends that "any *irrebuttable* 'self-certification' of a marketing claim would be an abdication of the Commission's statutory obligation to 'regulate and supervise' public utilities under [the] PUA." Appellees do not dispute this assertion, and they do not rely on the statement regarding self-certification as a proper basis to affirm the dismissal of the complaint.

Indeed, the Commission has taken the position in these proceedings that the sentence on self-certification is not a basis for affirming its decision to dismiss the complaint. At the hearing in the circuit court, counsel for the Commission stated that "[w]e mentioned self-certification in our order . . . [but] [t]hat really had nothing to do with it." Similarly, in this Court, the Commission did not rely on self-certification as a basis to uphold its Order, asserting instead that the basis for the decision was that it did not want to make a ruling on the broad issue of what constitutes clean energy. At oral argument in this

43

Court, neither the Commission nor Washington Gas maintained that self-certification alone could justify upholding the Commission's decision.

We agree with the parties that this bald statement, regarding a prior instance of self-certification in very different circumstances, is not a basis to uphold the decision to dismiss the complaint. We turn, therefore, to the basis for the decision argued by appellees, i.e. that a complaint was an inappropriate forum to address the claim of deceptive marketing.

## C.

### Inappropriate Forum

The Commission's third finding was that dismissal was warranted because "a complaint against one utility is an inappropriate forum to address the broader issues raised by natural gas and its role in greenhouse gas emissions . . . , even acknowledging that the Commission now has a statutory obligation to consider climate change." Appellees argue that this was the primary basis for the dismissal of the complaint.

The OPC asserts that its complaint alleged that "a specific marketing message on Washington Gas customer bills was deceptive and misleading," and it sought a Commission determination on that specific message, "an end to that marketing, and civil penalties." The complaint was not "against the gas industry generally or . . . the future of gas in the state." The OPC asserts that the question raised in the complaint could "be answered narrowly without (or at least without *necessarily*) addressing broader policy matters, or by addressing broader issues of energy policy." Regardless, the complaint could be dismissed only if it "fails to state a claim upon which relief can be granted." The

44

OPC argues that, by dismissing the complaint for a different reason, the Commission "violated its own procedural rules."

The OPC contends that, even if the complaint required "resolving broad issues, dismissal for that reason would be improper," asserting that "an agency cannot ignore the legal basis of a valid complaint simply because the complaint may implicate policy." The OPC acknowledges that the Commission has discretion to determine how to resolve a complaint raising broad issues. It asserts, however, that "what the Commission cannot do is abdicate its statutorily mandated responsibility for determining whether a public utility is violating the PUA." We agree.

Initially, we agree with the OPC that the complaint did not, as Washington Gas suggests, ask the Commission to declare "the role of natural gas in the State's energy future." Nor did it require, as the dissent concludes, that the Commission "adopt broad policy pronouncements regarding natural gas and climate change." Rather, the OPC asked the Commission to consider whether three specific statements contained on a Washington Gas bill violated the PUA because the unqualified claims "[in]accurately portray[ed] the impacts of their services."[23] The issue whether the three statements were deceptive because

---

[23] The dissent notes that Washington Gas provided documentation to support its contention that the statements were not deceptive or misleading, and therefore, there was no remaining dispute. Although it is true that Washington Gas provided support for its marketing statements, the OPC and Sierra Club challenged this documentation, arguing, among other things, that the studies that Washington Gas relied on were outdated and inaccurate. The Commission did not decide whether Washington Gas had shown that its claims were substantiated, or whether they could not be substantiated. Rather, it declined to make any findings on these disputed claims regarding whether the three specific statements were false or misleading.

they were not substantiated, not qualified, or lacked context was a legal issue, and a finding on that legal issue could be issued in a way that did not amount to a policy rule of widespread application. The Commission could have decided that the statement regarding natural gas being clean energy needed to be qualified, to say, for example, that it was relatively clean. Similarly, it could have decided whether the specific statements, i.e. whether converting an all-electric home to natural gas was the equivalent of planting 2.75 acres of trees, was or was not substantiated.

We note that the Commission itself characterized the OPC complaint as "narrow" because it involved the "inclusion of a message printed on certain customer bills of a single natural gas utility company operating in Maryland." And the Commission has acknowledged in this litigation that it has adjudicated deceptive marketing claims in the past, that it has jurisdiction over the deceptive marketing claims in this case, that it could have decided if the specific statements here were deceptive, and that is has the authority to issue civil penalties "against a utility or a third party supplier for deceptive marketing."

Even if a Commission decision regarding the marketing statements could affect other utility companies, that is not a proper ground for dismissal. *See Delmarva Power & Light Co.*, 370 Md. at 34-35 ("[A]gencies are not precluded from announcing new principles in adjudicative proceedings," and agencies must have authority to address issues on a case-by-case basis in fulfillment of their administrative obligations.). As indicated, the regulations provide that the only basis to dismiss a claim is on the ground that it fails to state a claim upon which relief can be granted. *See* COMAR 20.07.03.03A(3). The

46

ground given by the Commission, that the complaint involved broad issues that might affect other natural gas companies, is not an authorized basis to dismiss a complaint.

By dismissing the complaint on a ground other than that it failed to state a claim upon which relief can be granted, the Commission violated COMAR 20.07.03.03A(3) and the *Accardi* doctrine. To vacate the agency decision under the *Accardi* doctrine, however, the party alleging a violation must show that the violation resulted in prejudice. *Baltimore Police Dep't v. Antonin*, 237 Md. App. 348, 369-70, *cert. denied* 461 Md. 459 (2018), *cert. denied* 139 S. Ct. 1214 (2019). Dismissing a complaint on a ground not authorized certainly results in prejudice to the party filing the complaint, and appellees do not argue to the contrary. Accordingly, we hold that the Commission erred as a matter of law and/or was arbitrary and capricious in dismissing the complaint against Washington Gas regarding the deceptive marketing claims.

## II.

## Dismissal of Claims Involving WGL Energy

The complaint alleged that the OPC talked to Washington Gas about the marketing statements, and Washington Gas advised that the statements were on a bill issued by WGL Energy, and Washington Gas had "no control or connection to" the marketing contents. Based on that conversation, the complaint alleged that Washington Gas "appear[s] to violate the utility code of conduct," codified in COMAR 20.40.02.01, 20.40.02.02, and 20.59.07.07, by engaging in marketing with a core service affiliate, WGL Energy, and failing to afford non-affiliate suppliers with a similar marketing opportunity. The

47

complaint also alleged that WGL Energy violated the consumer protection regulations governing gas suppliers set forth in COMAR 20.59.07.

Washington Gas responded with varying statements. In response to the complaint, Washington Gas said that, contrary to its initial response, it was responsible for the marketing statement, which it said was on every utility consolidated bill regardless of the customer's retail supplier. After the OPC provided information to the contrary, Washington Gas explained, in response to the OPC's request for a hearing, that the statements were included only on bills sent to "autopay" customers.

In the Commission's order dismissing the complaint and denying the request to open an investigation into the transactions of Washington Gas and WGL Energy, the Commission stated that "[t]he record is clear that Washington Gas generated the utility-consolidated bills" at issue. Based on this conclusion, the Commission stated that "WGL Energy should not have been a party to this Complaint," and it dismissed the claim against WGL Energy. It further stated that this rendered the OPC's "claim of inappropriate affiliate interaction moot."

Appellants argue that the dismissal of the claims involving WGL Energy was unlawful and/or arbitrary and capricious. They assert that the complaint raised issues of material fact regarding which company was responsible for the bill message and which customers received the message, and the issues were not resolved by Washington Gas' "ever-changing explanations concerning the bill message." They argue that the Commission's dismissal of the complaint, in light of these "different stories" and the absence of any evidence, was arbitrary and capricious.

48

Appellants assert that, even if Washington Gas was responsible for sending the bills, WGL Energy still could have been involved in decisions to include the marketing message. Counsel for the OPC stated at oral argument that they still do not know the source of the message. If Washington Gas worked with WGL Energy to get the message on the bill, that would violate COMAR. The OPC has stated that it would be willing to dismiss its claim against WGL Energy if it receives evidence that WGL Energy had no involvement in the statement, but at this point it does not know the source of the marketing.

COMAR 20.40.02.01 governs prohibited utility conduct with an affiliate. It provides, in pertinent part, as follows:

A utility may not:

\* \* \*

(2) Give any preference to a core service affiliate, or non-core service affiliate, or a customer of either in providing regulated utility service; or . . .

\* \* \*

(4) Except as provided in Regulation .02 of this chapter, engage in promotions, marketing, or advertising with a core or non-core service affiliate.

COMAR 20.40.02.02 authorizes limited activities between a utility and an affiliate. It states:

B. A utility may engage in a joint promotion with a core service affiliate if:
(1) It affords all similarly situated non-affiliated licensed electricity or gas suppliers the opportunity to participate in the promotion; and
(2) The offer to participate is made in a manner designed to allow an equal opportunity to utilize the promotion.

We agree with appellants that dismissal of the OPC's claims against WGL Energy was premature. Although Washington Gas submitted an affidavit stating that it "does not have, and has never had, a joint marketing agreement with WGL Energy Services, Inc.," and it conceded that the marketing statements on the bills "were generated by and are the responsibility of Washington Gas," Washington Gas provided three separate explanations regarding the issuance of the bills, two of which were proven inaccurate.[24]

Moreover, appellants also claim that the absence of a joint marketing agreement does not preclude improper affiliation, as the Gas Companies still could have worked together. Because the record demonstrates that there are still facts in dispute regarding the source of the marketing message, we hold that the Commission abused its discretion in dismissing the claims relating to WGL Energy at that stage of the proceedings.

> **JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED; CASE IS REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE COMMISSION'S ORDERS AND REMAND TO THE COMMISSION FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEES.**

---

[24] The Commission criticized the OPC for failing to use its best efforts to resolve the issues at hand prior to filing a formal complaint. That conclusion, however, is belied by the record. It is the inaccurate information provided by Washington Gas throughout these proceedings that has resulted in the on-going dispute of facts here.

Circuit Court for Montgomery County
Case No. C-15-CV-22-001977

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 2033

September Term, 2022

_____


IN THE MATTER OF MARYLAND OFFICE
OF PEOPLE'S COUNSEL, ET AL.

_____



Graeff,
Leahy,
Getty, Joseph M.
    (Senior Judge, Specially Assigned),

JJ.
_____

Dissenting Opinion by Getty, J.
_____

Filed: December 20, 2023

The legal issue in this case is whether or not natural gas is a source of "clean energy"?

In its quest for the Public Service Commission ("Commission") to address this issue, the Office of People's Counsel ("OPC")[1] filed an administrative law complaint before the Commission challenging a marketing statement that was attached to certain bills sent out by the Washington Gas Light Company ("Washington Gas").[2] The message added to these bills read:

> Natural gas is a clean, efficient, and reliable energy. Converting an all electric home to natural gas is the equivalent of planting 2.75 acres of trees or driving 26,520 fewer miles each year. In addition, natural gas cost 1/3 less than electric, which makes it a smart decision for the environment and your wallet.

OPC claimed that the marketing statement was deceptive and misleading in violation of the Public Utilities Article and the general responsibilities of the Commission to regulate utilities. Further, OPC relied on new statutory language from Senate Bill 83 of the 2021 legislative session of the Maryland General Assembly to argue that broad issues of climate change policy must be addressed in this complaint. 2021 Md. Laws ch. 615

---

[1] Both OPC and Sierra Club filed for review of the Commission's order in the circuit court, and both parties filed for review in this Court. Sierra Club's arguments largely track with those of OPC, with an additional emphasis on the policy issues of environmental and climate impacts of natural gas in relation to Maryland's climate goals. Because the substance of Sierra Club's arguments mirror those of OPC's, this dissent will refer only to OPC in describing the Appellants' positions.

[2] OPC argues that WGL Energy Services, Inc., was improperly dismissed from the complaint, and the parties' briefs offer competing versions of communications concerning which Washington Gas entity was responsible for the marketing statement. Because I believe the Commission's dismissal of the OPC complaint was proper, I also dissent from the majority's conclusion that WGL Energy was prematurely dismissed as a party.

(codified at Md. Code (1998, 2020 Repl. Vol.) Public Utilities Article ("PUA") § 2-113 *et. seq.*).

Washington Gas responded by providing substantial documentation, including studies by federal agencies, academic institutions, and energy industry stakeholders, to prove that the exact language of the marketing statement was supported by extensive studies and that the statement was not deceptive or misleading. Moreover, Washington Gas questioned the underlying purpose of the complaint by responding that: (1) OPC did not allege that any customer was actually deceived by the marketing statements; (2) OPC did not allege that the statements were false; and (3) OPC grounded its "clean energy" argument on the Maryland Commission on Climate Change goals which are primarily policy recommendations.

The Commission determined that the OPC complaint was not a proper legal issue before the body. Whether or not natural gas is "clean energy" is not a legal issue but instead is a broad policy consideration best addressed in a different forum. Specifically, regarding the deceptive marketing complaint, the Commission found that "the complaint fails to adequately demonstrate a violation of state law or regulation in support of its broad allegations regarding the environmental attributes of natural gas." It further explained that

> a complaint against one utility is an inappropriate forum to address the broader issues raised by natural gas and its role in greenhouse gas emissions. . . . Given that this was a utility-specific complaint that did not include the other natural gas companies in the State, it is clear that this complaint is not the proper forum in which to address such broad issues . . . .

The Commission's order denying rehearing stated that Washington Gas "clarified that only its automatic payment . . . customers received bills with the message that OPC finds objectionable," constituting about 20.5% of the Maryland customers of Washington Gas. In its brief before this Court, the Commission noted that Washington Gas had removed the marketing statement from its bills, a point which OPC's counsel conceded at oral argument.[3] As such, this case is now largely moot. Any remaining issues for this Court to address are based only on OPC's request for fines against Washington Gas. The majority opinion, by deciding in OPC's favor, remands this matter to require that the Commission adopt broad policy pronouncements regarding natural gas and climate change premised solely on a request that fines be levied against a single utility. For these reasons, explained more fully below, I dissent.

### A. The Commission was correct in determining that this is a policy issue and thus had the discretion to dismiss the complaint as an improper forum.

The Commission retains broad discretion to address policy issues through either rulemaking or adjudication. Although OPC argues that legal and factual issues remained that precluded dismissal, the Commission's position that the issues for review implicated only policy is justified.

OPC claimed that the marketing was deceptive because referring to natural gas as "clean energy" falsely implies that natural gas use results in no significant greenhouse gas

---

[3] OPC did not concede that the message was removed immediately after it filed its complaint with the Commission. The precise timing of when the language was removed is largely irrelevant.

emissions. Washington Gas responded by supporting the factual basis for its marketing, which the Commission could rely on, even when accepting as true the "allegations and permissible inferences" in favor of OPC. *Parks v. Alpharma, Inc.*, 421 Md. 59, 72 (2011).

In reviewing the complaint, the Commission determined that, because Washington Gas had supported the veracity of the marketing statement, there was no remaining dispute. If the Commission were to look beyond the studies provided by Washington Gas to support the marketing, the Commission would necessarily have to take a stance on which studies on natural gas it would accept as persuasive. Also, the Commission would have needed to decide what statements about natural gas can and cannot be included in marketing statements. Both of these issues—which studies to accept as persuasive and what language can be used in natural gas marketing—are clearly more related to policy than a discrete legal issue about the Washington Gas marketing statement. Moreover, such policy decisions would affect other natural gas companies without the procedural process for public comment and deliberation including the opportunity for other utilities to provide input.

Maryland courts have long emphasized the importance of ensuring that administrative agencies have flexibility in determining whether to create policy through rulemaking or adjudication. *See Balt. Gas & Elec. Co. v. Pub. Serv. Comm'n of Md.*, 305 Md. 145, 168 (1986) ("It is a well settled principle of administrative law that 'the choice made between proceeding by general rule or by individual, ad hoc litigation is one that lies primarily in the informed discretion of the administrative agency.'" (quoting *SEC v.*

4

*Chenery Corp.*, 332 U.S. 194, 203 (1947))); *CBS Inc. v. Comptroller of the Treasury*, 319 Md. 687, 694 (1990) ("Our cases support the proposition that the administrative process is enhanced when an agency is allowed substantial flexibility to decide between establishing policy by way of rule or by way of adjudication."). Although most cases challenging agency action primarily concern challenges to an agency's decision to adjudicate rather than through rulemaking, the inverse remains true: an agency has the discretion to decline to make policy through adjudication.

An agency's discretion to choose between adjudication and rulemaking is not unfettered. In *CBS Inc. v. Comptroller of the Treasury*, the Supreme Court of Maryland discussed various out-of-state cases that concluded rulemakings *were* required in those instances. 319 Md. at 694–96. In summarizing those cases, the Court noted that rulemaking

> adds an aspect of fairness when an agency intends to make a change in existing law or rule. That fairness is produced by prospective operation of a new rule and by the public notice, public hearing, and public comment processes that accompany rulemaking, but that are sometimes absent from administrative adjudication.

*Id.* at 695.

The Supreme Court has upheld agency adjudications where the newly-stated policy did not apply retroactively or was not a significant departure from the original policy. *Frederick Classical Charter Sch. v. Frederick Cnty. Bd. of Educ.*, 454 Md. 330, 408–10 (2017) (collecting cases). The Supreme Court has also previously ruled that the Commission may not effectuate policy changes affecting "most of the electric and gas

5

utilities regulated by the Commission" through "case-specific adjudicatory proceedings." *Delmarva Power & Light Co. v. Pub. Serv. Comm'n of Md.*, 370 Md. 1, 38 (2002).

Here, the Commission determined that proceeding with OPC's complaint to address the broader issues raised by natural gas and its role in greenhouse gas emissions would be unfair to natural gas companies that were not parties to this case. The Commission was well within its discretion to decide that a complaint against a single utility was not the proper forum nor the inclusive procedural deliberative process for establishing the statewide policy concerning natural gas in the context of climate change.

As in cases where Maryland courts have ruled that administrative agencies were required to address policy issues in a rulemaking, the policy implications of OPC's complaint would have altered the Commission's approach to regulating natural gas marketing and natural gas companies more broadly than a specific marketing statement by one company.[4]

---

[4] We take judicial notice of the fact that OPC has a multi-pronged strategy for the development of a long-term policy on natural gas by either the Commission or the General Assembly. On February 9, 2023, OPC filed a petition with the Commission calling for the agency to engage in a public and transparent rulemaking process to realign state policies on natural gas with Maryland's greenhouse gas reduction goals. This petition underscores the fact that pursuing adjudication of one natural gas provider's marketing statement, as in the case before us, is the improper forum for addressing broad policy issues concerning climate change. *See Petition of the Off. of People's Couns. for Near-Term, Priority Actions and Comprehensive Long-Term Planning for Md.'s Nat. Gas Companies*, Case No. 9707; Md. Off. of People's Couns., Maryland Gas Utility Spending (Nov. 2023), https://opc.maryland.gov/Portals/0/Files/Publications/Reports/GasUtilitySpending%2011 -5-23%20FINAL.pdf?ver=QdfdqphWg8P8SSpjtB29YQ%3d%3d [https://perma.cc/2QHH-M67B]; Balt. Sun Ed. Bd., Staff Commentary, *As rate decision looms, a new warning about BGE gas plan*, Balt. Sun (Dec. 12, 2023, 8:20 AM),

The Commission's orders clearly contemplated these implications. As the Commission stated in its first order dismissing OPC's complaint, "a complaint against one utility is an inappropriate forum to address the broader issues raised by natural gas and its role in greenhouse emissions." The Commission further clarified in its order denying rehearing that even a finding that required edits to the marketing statement to resolve OPC's concerns about misleading advertising "would require an analysis of broader issues involving greenhouse gasses and environmental policy."

The fairness element of rulemaking, as defined by the Supreme Court in *CBS Inc.*— the procedural protections of public notice, public hearing, and public comment processes that accompany rulemaking but are absent from this particular adjudication—are central to the Commission's decision to dismiss this complaint as an improper forum. Ultimately, the Commission decided that "such an analysis is far outside the scope of this narrow complaint, i.e., the inclusion of a message printed on certain customer bills of a single natural gas utility company operating in Maryland."

The Commission's regulation limiting its power to dismiss complaints to those that fail to state a claim upon which relief can be granted, Code of Maryland Regulations 20.07.03.03A(3) (2023), did not prohibit the Commission from dismissing OPC's complaint. As described above, any relief the Commission fashioned for OPC's complaint

https://www.baltimoresun.com/2023/12/12/stranded-costs-bge/ [https://perma.cc/Z3UQ-2M2R]; William Hettchen, Reader Commentary, *General Assembly must set natural gas policy, not PSC*, Balt. Sun (Dec. 14, 2023, 2:44 PM), https://www.baltimoresun.com/2023/12/14/general-assembly-must-set-natural-gas-policy-not-psc-reader-commentary/ [https://perma.cc/4Z99-5Q6P].

would have broader implications beyond the scope of the complaint. There were no purely legal issues before the Commission, only policy issues, which fell within the Commission's discretion to address through either adjudication or rulemaking, and arguably *should* be pursued as a change in Commission policy through rulemaking.

As clarified by Washington Gas after OPC's request for rehearing, the marketing language at issue appeared on the bills of 20.5% of Washington Gas's Maryland customers, at most. The Commission clarified before this Court—and OPC agreed—that the language was removed from all bills. This case, therefore, withstands a mootness argument only because OPC requested that fines be issued against Washington Gas. OPC's other request that the language be removed has been voluntarily satisfied by Washington Gas. By remanding to the Commission, the majority opinion requires the Commission to issue a broad policy determination regarding natural gas and climate change based only on a complaint requesting fines against a single natural gas company.

For these reasons, the dismissal order by the Commission was not arbitrary or capricious.

***B. OPC's reliance on recent climate change legislation is misplaced because it did not substantively change the Commission's approach to climate issues.***

The OPC's reliance on Section 2-113(a) of the Public Utilities Article ("PUA") of the Maryland Code (1998, 2020 Repl. Vol.) is misplaced given the legislative history of the provision. Additionally, when the Commission dismissed OPC's complaint, there were no legal issues before the Commission. Instead, once Washington Gas demonstrated that

8

there were sufficient sources to substantiate the claims in the marketing statement, the only remaining issues before the Commission were policy related. OPC therefore did not adequately state a claim upon which relief could be granted given the legislative history of PUA § 2-113(a) and the lack of legal issues before the Commission.

PUA § 2-113(a)(2) requires that "[i]n supervising and regulating public service companies, the Commission shall consider," *inter alia*:

> (v) the preservation of environmental quality, including protection of the global climate from continued short-term and long-term warming based on the best available scientific information recognized by the Intergovernmental Panel on Climate Change;

> (vi) the achievement of the State's climate commitments for reducing statewide greenhouse gas emissions, including those specified in Title 2, Subtitle 12 of the Environment Article . . . .

OPC places great emphasis on these provisions in arguing that the Commission violated its statutory mandate by not investigating OPC's complaint. The legislative history behind these provisions, however, does not support OPC reliance on this section of the PUA.

The specific language regarding climate change in subsections (v) and (vi) of PUA § 2-113(a)(2) derives from Senate Bill 83, Chapter 615, of the 2021 Legislative Session.[5]

---

[5] In the brief from the Sierra Club, the legislation is referred to as House Bill 298. In this case, identical bills were cross-filed during the 2021 legislative session—House Bill 298 (Chapter 614) and Senate Bill 83 (Chapter 615)—and both were signed into law.

> When two bills are cross-filed in the General Assembly and both pass in the House of Delegates and the Senate, the Governor has the choice to sign only one bill or both. Traditionally, it has been good legislative practice to only

9

The focus of Senate Bill 83 concerns Certificates of Public Convenience and Necessity ("CPCN"), which are required before an entity can construct a generating station, overhead transmission line, or qualified generator lead line in the State. The Commission has the final say in CPCN approvals, but the CPCN process involves other State agencies, including the Department of Natural Resources and the Department of the Environment.

Senate Bill 83 added provisions to PUA § 7-207, the Environment Article, and the Natural Resources Article that require the various agencies involved in the CPCN process to consider climate change when reviewing CPCN applications. The Commission is also specifically required to consider the impact of generating stations on greenhouse gas emissions and whether CPCN approval for a generating station is consistent with Maryland's climate commitments for reducing greenhouse gas emissions.

Prior to the enactment of Senate Bill 83, PUA § 2-113(a)(2) did not contain express inclusion of climate change as considerations for the Commission. Instead, the prior PUA

---

sign one bill. This is done for several reasons, such as to not clutter the chapter laws with redundancy, to preserve resources of staff time and printing (the printed Laws of Maryland for each legislative session would be almost double in size, print, and paper due to the large number of cross-filed bills), and to avoid legal confusion if, during the bill drafting and amendment process, the two bills end up being not truly identical word-for-word. The only reason to sign both involves the pride of the primary sponsors who each want the benefit of having the Governor sign their bill. When both cross-filed bills are signed by the Governor in succession, the first bill is superseded by the second bill.

*Wheeling v. Selene Fin.*, 473 Md. 356, 405 n.2 (2021) (Getty, J. concurring and dissenting). Thus House Bill 298 (Chapter 614) was superseded by Senate Bill 83 (Chapter 615) when both were signed into law.

§ 2-113(a)(2) required that the Commission shall consider "the preservation of environmental quality" in its supervision and regulation of public service companies. The language added by Senate Bill 83 adds consideration of climate change and Maryland's greenhouse gas reduction goals to this provision.

In its testimony by letter to the Senate Finance Committee about Senate Bill 83, the Commission said that it "currently considers the preservation of environmental quality pursuant to [PUA] 2-113(a)(2)(IV)." The Commission then elaborated that its

> consideration of environmental quality [prior to Senate Bill 83] includes promoting greenhouse gas reduction, energy conservation, energy efficiency . . ., renewable energy, grid modernization, and reducing natural gas leaks through target infrastructure investments . . . . Where applicable, the Commission considers the State's established climate *goals*, as demonstrated by the Commission's January 2019 order approving the implementation of a statewide electric vehicle charging program.

The Commission's interpretation of a statute it administers (here, PUA § 2-113) is entitled to a degree of deference. *See Comptroller of Md. v. FC-GEN Operations Invs. LLC*, 482 Md. 343, 362 (2022). The Commission made clear in its comments that it was already considering climate change and Maryland's climate goals when needed even before Senate Bill 83 added specific language about climate to PUA § 2-113. As such, Senate Bill 83 did not create any obligations for the Commission that it did not already have.

Given the Commission's assertions that it had always considered climate change under § 2-113(a)(2)'s "preservation of environmental quality" language, the added language of Senate Bill 83 on climate change does not contribute anything meaningful to OPC's position that the Commission violated its statutory mandate. OPC places improper

11

emphasis on the new language in § 2-113 because there is nothing in the new language that would require a different outcome under the facts of this complaint.

The Commission's comments to the Senate Finance Committee in response to Senate Bill 83 further demonstrate the Commission's position that a proceeding against a single utility was improper for considering the role of natural gas in climate considerations. The Commission wrote to the Finance Committee that

> [t]o the extent that the addition of climate change considerations to *PUA* § 2-113 necessitates evidence in other proceedings (beyond CPCNs), input from state agencies with the relevant expertise may allow the Commission to make an informed decision. SB 83 does not require these agencies to participate in such proceedings, however.

As applied in this matter, the Commission dismissed a non-CPCN case against a single utility that would have resulted in broad considerations of climate change. This case implicates the precise issue the Commission highlighted for the Senate Finance Committee: input from other agencies would be necessary when making informed determinations regarding climate issues. The Commission, within its discretion, declined to make such determinations without input from agencies. Indeed, adopting new policy under this adjudication would limit public comment and participation to only these parties—OPC, Sierra Club, Washington Gas, and WGL Energy.

Further, although it did add language to PUA § 2-113, the legislative history is clear that Senate Bill 83 was primarily concerned with CPCN applications and approvals. The law required that the Department of the Environment and the Department of Natural Resources consider the climate impacts of electric power generation and generation siting

12

in evaluating CPCN applications. Much of the same language added to PUA § 2-113(a)(2) was also added to PUA §7-207(e), requiring that the Commission assess "the impact of the generating station on the quantity of annual and long-term statewide greenhouse gas emissions" based upon methods in the Environment Article and the Intergovernmental Panel on Climate Change and "the consistency of the [CPCN] application with the State's climate commitments." Many of the letters to the Senate Finance Committee reference a specific case, Commission Case 9482, where the Commission approved a CPCN application over challenges about the absence of climate change considerations in the approval. In the Commission's order denying an appeal of the approval, it stated that PUA § 7-207 "does not specifically or generally require considerations regarding climate change."

Although several letters to the Finance Committee quote this language as demonstrative of the Commission's failure to consider climate change in every plausible proceeding, the order clearly refers only to PUA § 7-207 concerning CPCN applications, not the Commission's overall regulatory authority in PUA § 2-113. These letters and other components of the legislative history of Senate Bill 83 makes clear that the primary purpose of the law was to resolve the issues surrounding CPCNs and climate change, like those in Commission Case 9482.

CONCLUSION

The dismissal order by the PSC was not arbitrary and capricious. I would uphold the decisions of the Commission that the matter involved broad policy considerations such

13

that the administrative complaint was an improper forum to address the "broader issues raised by natural gas and its role in greenhouse gas emissions." The Commission has discretion to pursue policy goals through rulemaking or through adjudication, which it exercised here. The changes in Commission policy that OPC seeks regarding natural gas are better achieved through the rulemaking process, where all affected parties and the public have a formal process for participation. Further, Senate Bill 83 is not a mandate that requires a different outcome. The Commission made clear prior to the bill's passage that the Commission already considered climate change under its existing mandate when necessary. Senate Bill 83's specification of climate change did not fundamentally change the Commission's approach to regulating and supervising public service companies.

For the above reasons, I respectfully dissent.